**MARK MIGDAL & HAYDEN**
PAUL A. LEVIN (CA State Bar No. 229077)
LAUREN M. GIBBS (CA State Bar No. 251569)
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone:   (305) 374-0440
e-mail:         paul@markmigdal.com
                    lauren@markmigdal.com

**MORTGAGE RECOVERY LAW GROUP, LLP**
Michael H. Delbick (CA State Bar No. 139200)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone:   (818) 630-7900
e-mail:         mdelbick@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
Joshua H. Packman (to seek admission pro hac vice)
3501 Fairfax Avenue
Arlington, Virginia 22226
Telephone:   (703) 474-1435
e-mail:         jpackman@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>    Plaintiff,<br><br>  vs.<br><br>CTX MORTGAGE COMPANY, LLC; and PULTE MORTGAGE, LLC<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

## INTRODUCTION

1. Pursuant to written agreements, defendant CTX Mortgage Company, LLC ("CTX"), brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of the agreements, CTX promised to indemnify WaMu for any losses arising either directly or indirectly, or in any way as a result of any inaccurate or incomplete application or other documentation prepared by or at the direction of CTX, or which in any way arise out of or relate to an alleged act or omission by CTX in connection with, among other things, an applicant, an application package, or a mortgage loan.

2. During the relevant time period when CTX contracted with and brokered loans to WaMu, CTX operated as the financial services subsidiary of Centex Corporation ("Centex"), a homebuilder. On August 18, 2009, Centex merged with a subsidiary of Pulte Homes, Inc. ("Pulte"), another homebuilder, and became a wholly-owned subsidiary of Pulte. Pulte in turn had its own mortgage financing subsidiary, Pulte Mortgage, LLC ("Pulte Mortgage").

3. On information and belief, after Pulte and Centex merged, Pulte transitioned the assets of CTX to Pulte Mortgage and Pulte Mortgage assumed the liabilities of CTX, including the liabilities alleged herein. As a result, Pulte Mortgage is legally responsible for the damages arising from the claims in this lawsuit against CTX. CTX and Pulte Mortgage may be referred to herein collectively as "Defendants."

4. After WaMu funded the loans from CTX, WaMu sold CTX-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least twenty-four (24) mortgage loans brokered by CTX ("CTX Defective Loans").

5. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R" or "Plaintiff") incurred losses settling the Trustee's claims. FDIC-R's losses arose out of and/or related to CTX's provision of inaccurate or incomplete loan applications or other documentation prepared by or at the direction of CTX and CTX's acts or omissions in connection with applicants, application packages, and mortgage loans including, *inter alia*, CTX's submission of loan applications and documentation that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

6. FDIC-R demanded that CTX honor its written contractual indemnification obligation, and Pulte Mortgage has notice of this demand. Because Defendants have not honored their obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

**PARTIES, JURISDICTION, AND VENUE**

7. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

8. CTX is a Delaware limited liability company with its principal place of business at 7390 South Iola Street, Englewood, CO 80112. At all relevant times, CTX was registered and licensed to do business in California.

9. Pulte Mortgage is a Delaware limited liability company with its principal place of business at 7390 South Iola Street, Englewood, CO 80112. Pulte Mortgage is registered and licensed to do business in California and transacts business from a branch office in Mission Viejo, California.

10. As noted in Pulte's public securities filings for the fiscal year ending December 31, 2009, "[a]s of December 31, 2009 we had transitioned all of CTX['s] . . . loan origination production to Pulte Mortgage."

11. As noted in Pulte's public securities filings for the fiscal year ending December 31, 2010 "we entered into an agreement in conjunction with the wind down of Centex's mortgage operations, which originated its last loan in December 2009, that provides a guaranty for one major investor in loans originated by Centex's mortgage operations." On information and belief, this guaranty pertains to liabilities associated with CTX's breaches of representations and warranties for CTX-originated loans.

12. Accordingly, on information and belief, Pulte Mortgage expressly or impliedly assumed the liabilities of CTX, including those related to the CTX Defective Loans.

13. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

14. CTX contractually agreed to venue in this district. *See* 2004 Mortgage Broker Agreement, ¶ 21, attached hereto as Exhibit 1. Venue is also proper in this district pursuant to 28 U.S.C § 1391 because Pulte Mortgage resides in this district in that it transacts business from its branch office in Mission Viejo, California. Additionally, venue is proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district.

**FACTUAL ALLEGATIONS**

15. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are

generally known as residential mortgage-backed securities.

16. On information and belief, CTX engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

**A. CTX's Contractual Obligations**

17. CTX and WaMu had a contractual business relationship, governed by mortgage broker agreements, including the 2004 Mortgage Broker Agreement ("2004 Agreement") and 2005 Mortgage Broker Agreement ("2005 Agreement") (collectively, the "Agreements") attached hereto as Exhibits 1 and 2, respectively.

18. CTX agreed that it would prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans. CTX was responsible for, among other things, representing loan applicants in locating lenders; interacting directly with and interviewing the borrower, counseling and assisting the borrower in the financing process; choosing the loan product with the borrower; collecting relevant information and documentation in support of the loan application; preparing the loan application and submission package; and submitting the completed loan package to WaMu.

19. CTX was compensated for any loans funded by WaMu, including the CTX Defective Loans.

20. Pursuant to the Agreements, CTX expressly agreed to indemnify WaMu as follows:

> [CTX] will indemnify, defend and hold [WaMu] . . . harmless from any and all costs, claims, charges, actions, causes of action, losses or liability arising either directly or indirectly, regardless of any indemnitee's negligence, by reason of [CTX's] negligence, a breach of the terms or conditions of this Agreement, or in any way as a result of an inaccurate or incomplete application or other documentation prepared by or at the direction of [CTX]. (2004 Agreement).

> [CTX] agrees to indemnify, hold harmless, and defend [WaMu] . . . from and against any and all losses, claims, demands, damages, expenses or costs (including, but not limited to, reasonable attorneys' fees and costs incurred by [WaMu], with or without suit) which in any way arise out of or relate to an alleged act or omission of [CTX] . . . in connection with an Applicant, an Application Package, a Mortgage Loan, or this Agreement.  (2005 Agreement).

**B. The CTX Defective Loans**

21. Pursuant to the Agreements, CTX brokered the 24 CTX Defective Loans summarized on Exhibit 3, which is incorporated by reference and attached hereto.

22. As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the CTX Defective Loans.  Accordingly, FDIC-R incurred losses in connection with the CTX Defective Loans.

23. The CTX Defective Loans contained inaccurate and incomplete loan applications or other documentation because of misrepresentations in the application materials, including but not limited to misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral.

24. As an example, the loan applications and documents for borrowers RP and MP contained deficiencies, inaccuracies, and material misrepresentations.  CTX prepared and submitted loan applications and documents for RP and MP that misrepresented their combined monthly income as approximately $13,380.  In fact, RP and MP's actual combined monthly income, as reflected on their actual tax returns, was only $6,900 per month.  Accordingly, among other things, RP and MP's loan applications misrepresented RP and MP's capacity to repay the loans.

25. As another example, in support of the borrower's credit history, CTX prepared and submitted the loan application and documents for AD that failed to disclose that AD had incurred $176,000 in mortgage debt on another property

purchased from the same seller one week prior to the funding of the subject loan. Accordingly, among other things, the loan application misrepresented AD's credit and capacity to repay the loan.

26. Taken together, the 24 CTX Defective loans include, *inter alia*, loans with undisclosed and/or misrepresented mortgage loan obligations, loans with false or misleading rental histories, loans with false employment histories, loans with inaccurate appraisals, loans with false occupancy representations and certifications, and loans with misrepresented sales transactions.

**C. WaMu's Sale of the CTX Defective Loans to the RMBS Trusts**

27. After WaMu funded the CTX Defective Loans, WaMu sold each of them to the RMBS Trusts.

28. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies CTX provided to WaMu, WaMu provided representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans, the borrowers, and the collateral. With respect to defective loans, WaMu was liable to the RMBS Trusts, *inter alia*, where there was a material misrepresentation or omission in a loan application or other supporting documentation.

**D. The Trustee Action and FDIC-R's Settlement with Trustee**

29. After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts. On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from such loans that WaMu sold to the RMBS Trusts, including the CTX Defective Loans.

30. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

31. Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including representation and warranty breach claims arising out of or relating to the CTX Defective Loans. On September 5, 2017, FDIC-R paid the $3,006,929,660 Receivership Certificate to the Trustee in settlement of Trustee's claims, including claims on the CTX Defective Loans. Settlement of the Trustee's claims for that court approved amount was objectively reasonable. FDIC-R's indemnification claims are timely because they are brought within six years of the date of accrual. 12 U.S.C. § 1821(d)(14).

32. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the CTX Defective Loans. The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties including, *inter alia*: misrepresentations, negligence, or fraud that occurred in the origination of the loan; misrepresentations of income; and loan-to-value ratios that exceeded 100 percent. Given CTX's role and conduct in connection with the CTX Defective Loans, including CTX's relationship to the borrowers and its preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability and loss to the Trustee arose out of or related to CTX's provision of inaccurate or incomplete loan applications or other documentation prepared by or at the direction of CTX, and to CTX's acts or omissions in connection with applicants, application packages, and mortgage loans.

**E. CTX's Breach of the Indemnification Obligations**

33. On October 14, 2021, FDIC-R sent a demand letter to CTX seeking indemnification for its losses arising out of and/or related to CTX's submission of inaccurate or incomplete loan applications or other documentation in connection with the CTX Defective Loans. Pulte Mortgage has notice of the indemnification demand.

8

COMPLAINT

Neither CTX nor Pulte Mortgage honored their obligation to indemnify under the Agreements.

34. The Agreements provides that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce FDIC-R's rights under the Agreements, FDIC-R has retained outside counsel and agreed to pay reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

35. All conditions precedent to the relief sought in this action have been fulfilled.

## CLAIM FOR RELIEF

### (Contractual Indemnification)

36. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

37. The Agreements are valid and enforceable contracts.

38. Plaintiff substantially performed all its obligations under the Agreements.

39. FDIC-R is entitled to indemnification from Defendants for losses and liabilities that FDIC-R suffered settling the Trustee's claims, arising out of the inaccurate or incomplete applications or other documentation prepared by or at the direction of CTX, and out of CTX's acts or omissions in connection with applicants, application packages, and mortgage loans, in connection with the CTX Defective Loans.

40. Defendants breached their obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A. A judgment against Defendants CTX and Pulte Mortgage in an amount to be proven at trial for their breach of their indemnification obligations;

B. Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C. Reasonable attorneys' fees;

D. Costs and expenses; and

E. Any other relief as the Court deems just and proper.

DATED: August 28, 2023          MARK MIGDAL & HAYDEN

                                By:         /s/ Paul A. Levin
                                Paul A. Levin

DATED: August 28, 2023          MORTGAGE RECOVERY LAW GROUP, LLP

                                By:         /s/ Michael H. Delbick
                                Michael H. Delbick

DATED: August 28, 2023          FEDERAL DEPOSIT INSURANCE CORPORATION

                                By:         /s/ Joshua H. Packman
                                Joshua H. Packman (to seek admission to pro hac vice)

                                Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank